May it please the Court, my name is Neil Fox, and I represent Index Newspapers, which publishes a newspaper called A Stranger. I'd like to reserve four minutes for rebuttal. Nearly a year ago, the District Court issued an order releasing Ms. Olshnik and Mr. Duran from custody, from confinement. The order detailed the onerous conditions of confinement that these two individuals endured at the Federal Detention Center after being found in contempt. But this order is not publicly available. If someone was reading the Puget Sound Anarchist website and saw reference to two people held in custody for their political views, with held in solitary confinement, and someone wanted to check and find out what actually took place. They wanted to see, was this true or not? And they would contact the District Court, either go there in person or check online with PACER, and they would find no record of these cases taking place. They couldn't find the order releasing them from custody. They couldn't find any reference to these individuals being found in contempt. They couldn't even find the litigation over the unsealing of the file, so that someone would not be able to find out why these files were not available for public inspection. This secrecy violates the First Amendment. And it violates the First Amendment because the contempt proceedings, or at least portions of the contempt proceedings, were open to the public. And once proceedings are open to the public, then it's clear that the documents in the court file that help explain what took place in open courts are also open to the public. Counsel, I wonder if you could do me a favor. Throughout the briefing, the parties use the word proceedings, and I find that really unhelpful because it's a vague term. So to the extent you can, if you can differentiate between the filings and access to a hearing, which I'm going to understand as being able to walk in the door, but also the ability to receive a transcript of the hearing, that would help me a lot. Well, I think it is vague because everything tends to get pushed together. I mean, you're right. There are different portions of this, but there are cases from this circuit, and I think the government itself cites two, the Associated Press case, where the right of access to documents filed in a proceeding is coextensive with the right of access to the proceeding itself. So the proceeding is what takes place in court. There are — But, Counsel, that's — I know your time is going to be ticking away here, but let me just say in summary form that that proposition is very problematic in this case. So you can address it or not address it, but it's problematic. Well, I think we can argue about what documents should be included in disclosure. I mean, there's — in this particular case, there's a motion to quash the subpoena. There's briefing about — you know, there's a contempt order. There's the briefing and affidavits for release. There's the judge's order releasing them. I mean, those are all, I would submit, ancillary to the ancillary proceedings. There — and we could argue about that. I mean, at certain points, we could talk about what comes with the contempt proceeding itself. So here's the deal. Do you accept the proposition that the grand jury proceedings are secret and there is no constitutional right or statutory right to what actually goes on in the grand jury proceedings for purposes of this case? Yes. Okay. So what you're saying, as I understand it, is you'll concede that there is a core of secrecy, but you are focused on the ancillary contempt proceeding, and your argument, as I understand it, is that to the extent there aren't secret aspects of the grand jury disclosed, you're entitled to those. Yes. And if there are embedded in the proceedings matters that are not secret but there are some that you concede would be secret, the access is qualified and limited to those that aren't protected by grand jury secrecy, and it's the burden on the court and the government to redact anything that would fall within the secrecy scope. That's correct, Your Honor. Okay. Now, I don't know how many files the district court referred to the enormous burden on the court and on the government to go through and parse all the files. That's a situational argument, arguably. The analogy would be in civil litigation where counsel or the defendant is a corporation or whatever, has thousands and thousands of files and claims that there's attorney-client information in that and we're product, and the process is to go through and redact, and from personal experience I can say that that can be a very, very burdensome task. It costs lots of money, takes lots of time to go through and parse through the documents. So how would you manage what you're ultimately asking for in this case, assuming, for the purposes of the question, that we were to agree that there's some aspects of the proceedings that would be accessible to the public? Well, Your Honor, in this case we have the unique ability to actually see in the public record now in our mandamus case what exactly took place in the district courts because the district courts said that the parties and the stranger were free to disseminate anything that they got in the district court proceedings. We filed this parallel action, the mandamus action, and you could see that there's very little, if anything, that would need to be redacted in this particular case. So that talks about this case, but what principle are you asking us to articulate here if we rule in your favor and what's the limitation on it? The principle is if there's an open contempt proceeding, a hearing. Well, this was partially open. Partially open. That's the point. Okay, go ahead. There's a partially open contempt hearing that the documents in the court file that relate to that hearing need to be open to the public, subject to redaction. Just interestingly, counsel for Mr. Durand filed under seal the transcripts from his proceeding, and I actually haven't seen those because they're under seal. But I filed in the mandamus action the redacted transcripts, and it didn't seem to be that burdensome to go through and black out what was considered to be grand jury secret. But to Judge Fischer's point, that's a function of the size of the record, right? Correct. And I would submit that in most grand jury cases, it's not going to be particularly burdensome. What's the basis for that statement? Well, most of the cases are going to involve a witness who comes to the grand jury, is asked a question, refused to answer. They're taken in and brought to court. And the proceeding is going to be fairly small. This case, actually, was probably larger than most because of the First Amendment arguments advanced by counsel. And I guess we don't have to agree with Olshnick's and Durand's First Amendment arguments to recognize that it was an issue that was raised. And because of the First Amendment arguments made, because of the allegations of government misconduct, whether you accepted them or not, that raises a public interest where public participation, public awareness of what's going on is important. And if, unfortunately, it does burden a party to propose redactions, it is something that goes on. My own experience is more in state court where we have a much stricter, open proceeding constitutional amendment. And when we want to seal something, it is burdensome. But I think once the proceeding is open, then that presumption shifts to demonstrate that there is, in fact, something that needs to be sealed, that needs to be hidden from the public. So the way you're defining a counsel, it seems to me that the part of the file, I'm talking about paper, that you think would be simple to redact and pretty finite universe is the part of the contempt hearing that entails and is necessary for predicate finding of contempt. To begin with. And that's where you would draw the line. When the door is unlocked because a finding of contempt is made and the proceeding becomes open, then at that point forward, that's where you're drawing the line and you think the burden shifts. And I think it's retrospective. Is that a yes? Could you answer the question? Is that a yes? No. Okay. I think that once the proceeding is open, predicate filings may be subject to disclosure so that people can understand why there's a motion to quash some of the First Amendment issues. So in this particular case, there were filings before Mr. Duran and Ms. Olchenek were found in contempt. Preparatory to the contempt hearing. Right. So if that hearing becomes open at some point, which it typically would, then you think the burden should shift sort of retroactively to include those pre-hearing filings. Because they help explain what's taking place at the hearing. And yes, I think that's the rule. And then you think the burden stays shifted for everything else filed going forward? Is that right? Yes. Yes. Counsel, let me ask you a question. Sure. Do you have any authority from our circuit or any other circuit that gives a sanction to that type of procedure? No. This case is unique in the sense that all the other cases involving, quote, the motion to unseal, there were no specific proceedings that had been opened. So this is one of the only cases I'm aware of where you have this array of factors. You have an open proceeding. You have the witnesses saying they want the files opened. And I think I'm down to three minutes and 20 seconds. I'll reserve the rest. Would you like to reserve your time for us? Yes. Could I ask you, either on rebuttal or in the next ‑‑ I'm not sure which case raises it in any event. You mentioned mandamus. Right. So one of the questions before us is whether this is viewed as mandamus or it's a direct appeal. I'll answer that very briefly. I don't think it matters because we filed both. And as I think it was a First Circuit case said, all roads lead to Rome. We're here. I filed both to avoid getting bogged down in that dispute. Mandamus may have a somewhat different standard attached to it. Sure. I'll deal with that on rebuttal if the court likes. Thank you. Okay. Thank you, Mr. Fox. Now we have Ms. Gordon. Is that right? On behalf of Mr. Duran. Thank you. Good morning, Your Honors. Procedurally, I am here not because Mr. Duran has filed a motion, but because he's a party in interest and the court has directed him to file a response to index newspapers rid of mandamus. But I appreciate the court asking him to be here because, substantively, Mr. Duran's wishes do matter. Whether he will find solace in secrecy or strength in publicity is a question that is personal to him, and only he can answer that question. And in that regard, personally, what we have made clear in the record is that he has feared more what the government will do behind closed doors than what harm will come to him from the public watching and knowing what he has gone through. In my portion of the argument today, I intend to focus on this issue from Mr. Duran's perspective and his interests. But to start off with, I want the court to know that I agree with some basic things that Mr. Fox and index newspapers have said, or that I believe are in accord with his position. First, that is, when we are dealing with the universe of potential grand jury-related information, there are simply some grand jury materials to which the public, the media, has no right of access. Second, there are other things related to the grand jury that do become publicly available if Mr. Duran exercises his right to have them opened or does not object to them being opened by the court, and if keeping them from the public is not necessary in order to protect grand jury secrets. The third thing- That includes some limitation on the ability of the government to redact anything that would go beyond what Mr. Duran has deemed acceptable to himself. Yes. However, there's two ways that the media or people, members of the public, could access information. One is through Mr. Duran sharing that information, because as the federal rules, as even the district court in our case recognizes, Mr. Duran has a First Amendment right to share anything he has received or he has learned from his grand jury experience. And there's no limitation on that without affecting his First Amendment rights. But separate from that is the situation where Mr. Duran is not handing out the information, but rather others, such as index newspaper, are asking to have that information on their own. And so that's when the obligation of the court to redact for grand jury secrets kicks in. I have a question for you there. And I realize, although Mr. Duran's style as an appellee, his interests are to some extent aligned with the newspapers in requesting disclosure. But in terms of redaction, do you agree with Mr. Fox's position from your client's point of view that once a contempt proceeding occurs, that then all prior grand jury materials prior to that come into the public domain subject to redaction? Or is it just the materials once the contempt proceeding starts? I believe that I agree with Mr. Fox's position in that regard. But I would like to turn to the diagram that I have provided you, because I think that it may help us all get on the same page about what is a grand jury proceeding, what materials are we talking about? We have the diagram. We have the diagram? You have the diagram. Thank you. So the diagram, at the center of the diagram, there are two circles, the red and the orange with number one and number two. The red circle has to do with grand jury transcripts or what is actually said in the closed grand jury hearing, and also exhibits that the grand jury itself might consider. In the orange circle, that relates to closed portions of a contempt proceeding. After someone appears in front of a grand jury, goes in front of the court on the consideration of whether or not they have acted in contempt, and the court at that point generally hears transcript, at least part of the transcript of what was said in front of the grand jury. You're not seeking or arguing that you have the right to act. There's a public right of access to one or two, right? That's correct. What about three? Three, we believe that there is a public right of access once Mr. Duran asks to have that portion of the contempt hearing open or the court opens it. The diagram here at three says open portions of contempt proceedings, so it doesn't seem to be triggered by Mr. Duran asking to have them open. It seems to be triggered, according to this diagram, by the court opening them. So could you put a finer point on that? Sure. In this case, what happened is the court opened the proceeding and Mr. Duran did not object. But what we have seen in other cases – Counsel, your time is ticking, but on box number three, is it your position that this is triggered by the court opening the proceeding or by Mr. Duran requesting the court to open the proceeding? In this case. There's a difference. Yes, in this case by the court opening the proceeding. Thank you. Pardon my interruption, but I just really need to understand your position, and you said both things, so thank you. And I appreciate that question. I hadn't seen the distinction before now. So Section 4 deals with other grand jury-related hearings and pleadings, and I think that when you look at this temporically, it becomes difficult, and it's not workable in the general context. We can't simply look at, well, what was said after Mr. Duran's grand jury appearance, what was filed after that point, because what happens quite often in these cases is whether or not something gets said before or after that point is really one of happenstance. For instance, here, many of the arguments that were made in the motion to quash were procedurally appropriate as a part of the contempt proceeding after his grand jury appearance, but they were made ahead of time partly out of deference to the fact that these are weighty issues that needed to be briefed. We wanted to give people notice. We wanted to have a chance to discuss these in front of the court, and there was the possibility that the court would find that Mr. Duran did not have to go forward with that grand jury appearance at all. And what happened during the contempt portion of the proceeding and after his grand jury appearance is that those arguments were incorporated by reference, and that was specifically done at that portion. So simply because temporally those pleadings were submitted before he walked into the grand jury room doesn't take them outside of the realm of what we believe should be able to be accessed by index newspapers. When you say they were incorporated by reference during the contempt proceedings, could you be more specific? Yes. What was precisely said? My recollection is that we were given the opportunity to incorporate the objections that we had raised, the legal concerns that we had raised. Basically, the argument that Mr. Duran had the right that came from the First Amendment to refuse to answer the grand jury's questions in this case, we raised that ahead of time, but we argue that that was also a defense to him being held in contempt. When you incorporated this by reference, did you incorporate the motion to quash in its entirety or just portions of it? My recollection is that it was in its entirety, and certainly that was my intent. Is it your position then, going back to your chart, that once the court entered an order opening the proceedings, and I mean unlocking the door at the contempt hearing, that then there would be a duty that I'm going to use the same language I used with Mr. Fox. Is there a retroactive duty then for the government to look at the entire file back to day one and redact it? Yes. That's your position? Yes. And the file includes the closed portion of the contempt proceedings and the grand jury transcript and exhibits? Yes, as well as the pleadings that went with the motion to quash. Also on the diagram, and this is the outermost circle, is anything else that references the existence of the grand jury. This includes the docket for the case. The docket sheet. The docket sheet, correct. As opposed to all the documents in the docket. Correct. Okay. The ministerial records, and for cases like this one, motions to unseal. I think that those are also within the realm of the documents that the media, in this case, has a right of access to subject to the appropriate redactions. We have talked about when the contempt hearing was open and whether that was done by the court or Mr. Duran's request. What is clear to me at this point from looking at the authority, like the U.S. Supreme Court decision in Levine, is that Mr. Duran, as the contemptor, had an open hearing right that stemmed from the due process clause. And so had the court not opened the hearing at that point, he would have had the right to stand up and say, please do so. But it did. That's correct. And you're not contesting that was violated, right? We're not saying that, well, factually, we do have concerns about what happened. Okay. Setting aside the incident about the door appearing to be unlocked and there was some confusion about that, setting aside that incident. Then we're not saying that there was a problem. Okay. That's helpful to me. Thank you. We know that Mr. Duran's right to request an open hearing covers at least part of the contempt proceeding. But I think that the diagram that we have given you would help determine at what point that right really kicks in. What courts have looked at is at what point during that proceeding does it look less like testimony in front of the grand jury and more like an adversarial process. And in that regard, we do not agree with the district court's determination that the only thing that should be released is the transcript of the open portion of the contempt proceeding. We don't agree that the pleadings and the transcript of the motion to quash should be kept secret. And we don't agree with the government's position that everything that transpired, except for the few moments when the court ordered Mr. Duran to be held in contempt, that anything but that was a grand jury secret. I think the U.S. Supreme Court in Levine has given us very helpful language. This is at page 618 of that decision. Petitioner had no right to have the general public present while the grand jury's questions were being read. However, after the record of the morning's grand jury proceedings had been read and the six questions put to petitioner with a direction to answer them in the court's presence, there was no further cause for enforcing secrecy in the sense of excluding the general public. Okay, so just to take that quotation and tie it to your helpful diagram here, to be sure I'm understanding your position, even though Mr. Fox conceded that there is grand jury secrecy and you're not challenging that, to the extent one and two fall within that core grand jury grouping, once they get to stage three, then at that point anything relating to Mr. Duran encompassed within two or one, all the way back to one, is presumptively subject to public access and the government can only redact those things that don't relate to Mr. Duran. If I'm understanding the court's question correctly, the answer is no. I'm trying to understand the diagram. Once we reach that point that the Levine court is talking about, then everything but what is in number one and number two in the diagram is subject to open access, to public access. But the things that are represented by circles one and two should be redacted from either the materials or the transcripts to which the public is given access. Who does that redacting, according to your document? The authority that has been cited in indexed newspaper in their pleadings suggests that it is the government and the court's burden to redact, the government and the court. I would defer to indexed newspapers on that. Let me ask you a further question, if I may. With regard to the motion to quash and the incorporation by reference of that that you've said during the contempt proceeding, was it incorporated by reference during the open portions of the contempt proceeding or during the closed portions of the contempt proceeding? Your Honor, I don't have an answer to that question without referring to the transcript. I would have to do that. Okay. Can I give a specific hypothetical so I can make sure I understand the answer to my earlier question? If Mr. Duran agrees to open in the contempt hearing, have the Q&A within the grand jury proceeding, questions and answers or refusal to answer that would pose to him that would normally be protected by secrecy. Once we reach stage three, that portion of the grand jury transcript would become subject to public access. No. That would still be appropriately redacted. Okay. So they would redact. So if they're redacting from the grand jury transcript, what in one or two would be subject to public access? Nothing from the transcript of what actually transpired in the grand jury room would be accessible. Similarly, if the transcript of what was read or what took place in the grand jury room was read during the contempt hearing, that would be subject to redaction. Okay. But you're saying it wouldn't be accessible, like the grand jury transcript and exhibits, but they would all have to be reviewed by the court or the government to have redactions done? The transcript from the grand jury room itself would, since there is no right of access, there would be no need to review that for redactions. The transcript of what happens during the contempt proceeding would need to be reviewed for redactions, and those redactions would include any reading of what happened in the grand jury room. And I don't want to take you further because you're over your time, but even the closed part of the contempt proceeding, you're saying that part would have to be redacted? No. If for any portion of the hearing that is, it depends on the definition of closed. I believe that if the hearing is closed until that moment in Levine, that that's the line between closing and opening, if that's where the line is drawn, then anything that takes place before the contempt hearing is opened would not be subject to redaction. Okay, thank you. I think we'll hear from the government now, from Mr. Morgan. And Mr. Morgan, my question took counsel for Mr. Duran a bit over time, and I recognize from your letters that the government's position is that Mr. Duran, and Appelli is sort of aligned with the newspaper, so if you need a couple of minutes more than your 15 minutes, just let us know. Thank you, Your Honor. Counsel, could I ask a question before you even start? Sure, why not? Because, yeah, thank you. Because I think it's very important, and I just can't find it anywhere. Did index newspapers intervene? There was no formal motion to intervene, but that's not, under the local rules, that's not really required. So the government has an objective. They seem to be treated as a party here, and the government's not objecting? We're not objecting to the extent that we agree that they were entitled to make an application to unseal. Whether you want to denominate them a formal intervener, I mean, there is no intervention in the traditional sense of that word in a grand jury proceeding or in a criminal proceeding. So here's the reason I'm asking is because at some point, when we read these pleadings or filings chronologically, both of you start calling the newspaper intervener, using that as a term of art, and I just wanted to be clear because it matters when we talk about this analysis of whether this is going to be treated, I think, as an appeal or as writ of mandamus, and that's why I'm trying to get the government's position on whether there's an appealable order here that resolves the issue they're raising in their application. Okay. I'll certainly address the appealable order issue, but the government's position on their denomination as an intervener, under the local rules for the Western District of Washington, we agree that they are properly denominated an intervener. Thank you. So we'll agree with the denomination. Okay. I'm not 100 percent sure whether that truly affects whether or not this is a final appealable order or a non-appealable order. The government's position has been that we believe that under this Court's precedence, which admittedly kind of go in different directions, that the most analogous precedent suggests that this is a final order that is appealable under 1291. Okay. So while I suppose I would prefer this to be a mandamus petition with the burden being greater under this Court's precedence, the government does believe that this is a final appealable order. Okay. Listening to counsel's arguments, I noticed that I didn't hear the Rule 6e mentioned once. And I find that interesting because I think Rule 6e pretty much solves all the problems or questions that have been raised by the appellant and my co-appellee. Even the docket sheet? Even the docket sheet. Tell me about that. The docket sheet admittedly is probably the most problematic of all of the documents. Nevertheless, it does meet the definition of a matter that is a record order or a subpoena relating to a grand jury proceeding within the meaning of Rule 6e6. So starting with that, that's the outside circle. It seems to me that that might be different depending on the case we're talking about. I can imagine a circumstance where the identity of a person being called to the grand jury would having that disclosed could be very disruptive to an ongoing investigation. But I can also imagine a situation where that information has been released and is quite public, and so really having a docket sheet doesn't involve any additional disclosure at all. What's the government's position? The government's position is that the wording of Rule 6e6 seems to encompass the court's second hypothetical because there is a qualifying language at the end which does say that it's only as long as necessary to protect the disclosure of a matter occurring before the grand jury. That's a discretionary call for the district court to decide in that particular case whether or not sufficient disclosure has been made such that the continuing need for sealing under Rule 6e6 continues to apply. The district court, in fact, made that call in this case. I'm not sure the district court did. That's the problem I've got. The district court ordered – that's one of the problems I've got. The district court ordered that the hearing transcript, the open portion of the contempt hearing transcript, was to be released, but it's not accessible or viewable on a docket, and it's not even clear to me that the district court contemplated that or intended that result. Intended for the result to be not appearable on the docket? Right. I mean, he said this portion of the transcript is going to be released and unsealed, but his order doesn't speak to the fact that nobody can find this on the docket. No, it doesn't speak to that fact, and if the court wanted to remand to sort of clarify that one issue, the government would have no problem with that. No problem with what? With having the docket unsealed? No, with having the docket unsealed to the extent of allowing perhaps that one entry. But I do want to point the court to the fact that the district court did, in fact, make a specific finding that – because it acknowledged the theoretical possibility that sufficient disclosure could take place to obviate the need for secrecy under Rule 66 and found that it hadn't happened here. That's a factual determination made by the district court, and that fact is not clearly erroneous on this record. Right now, am I misunderstanding this? Right now if somebody went to, hey, sir, a member from the public, and typed in Mr. Duran's name, they wouldn't find this at all? No. It would be sealed. I believe nothing would come up. Nothing. I think nothing comes up. I believe that may be right. I haven't run the search. As opposed to saying, Mr. Duran, sealed. I think you don't – it appears as though there is no file. And that's why it should be, because, of course, Mr. Duran's identity as a grand jury witness is by definition a matter occurring before the grand jury that should be sealed. Just a minute ago you said you wouldn't object to remand have that much. Well, to the extent of allowing the – you know, it's difficult. I grant you that the docket sheet is difficult. But the district court contemplated one narrow portion of this entire proceeding be made public. And it is public. It's just that it's not perhaps as easily accessible to the public. So the government doesn't object to the existence of the file being made public or to that one docket entry? I'm not sure I said a file. I'm – You can't have a docket available unless the existence of the file is going to be known to the public. That's what I'm trying to – Well, that's a problem. And the government does have a problem with that, because under the rule, the rule says that any disclosure of a matter occurring before the grand jury is subject to the secrecy of Rule 66. So you do object to – Well, we can't – we certainly can't object to the district court's order ordering disclosure of the public portion of the transcript. We don't object to that. You're asking me what is essentially – and I certainly appreciate the court's concern. It's a procedural issue of how to make that order public. But – and I – Frank, I don't have a good answer for you, because I do not think the docket sheet should be unsealed. I think it is subject to the rule of 66, and I think the district court properly exercises discretion in finding that the need for that secrecy still exists. So that is – that – I grant that as a slight dilemma. But backing up from just the one portion of the transcript that was ordered unsealed, I have to confess this new theory of that somehow because the adjudication of contempt occurs in public, this somehow retroactively unseals everything that happened before. I mean, that's something that's just been ginned up at oral arguments, so we've never had a chance to respond to it or even think about it. But I can certainly say that there's not a single case that would even remotely support that proposition. What about the proposition of – do you have the diagram? What about the proposition that temporally, that once the door is unlocked, once the contempt proceeding becomes open, that from that point forward, there ought to be a shifting of the burden? What about that? We disagree with that. It doesn't follow from the rule of 6E. I know you disagree with that, but would you like to explain why? Because Rule 6E specifically says that, you know, all records, orders, or proceedings, that's Rule 66, and Rule 65 is subject to the limited open right of access in a contempt proceeding. The court must close any hearing to the extent necessary for disclosure of a matter occurring before the grand jury. So anything going forward to the extent it's going to disclose a matter occurring before the grand jury still is subject to Rule 66 secrecy. This idea that somehow or other, because a small portion of a contempt proceeding needs to be open, that that somehow renders subject to some right of access documents that are not by definition subject to the right of access is like the paradigm example of bootstrapping. What about the court's order? He said two things in his order. He said every ancillary proceeding requires some disclosure of what has occurred before the grand jury. And then on the next page he said, but not every record that pertains to the grand jury is subject to the traditional secrecy requirement. And he opened the contempt proceeding. He seemed to acknowledge that at some point there is, and to some extent there is, a right of access. Well, the court certainly recognized that under Levine it had no discretion not to open the actual adjudication of contempt, which it did. Levine does not require the opening of any document in the grand jury file. Levine does not stand for that proposition. Not a single court has read Levine to stand for that proposition. So the court did exactly what Levine requires. The Supreme Court's precedents following Levine make crystal clear that the records of the grand jury proceeding are not subject to a First Amendment right of access. There is simply no historical basis for finding that any written record relating to a matter occurring before a grand jury is subject to a First Amendment right of access. Counsel, let me ask you a question, if I may. So does this mean that the court ordered that the contempt proceeding in part would be open, but the newspaper cannot get a transcript of the open portion? No, the newspaper can. And, in fact, that was the intent of the court's order, is that it could. And Mr. Fox has filed that portion of it as a supplemental exhibit in the mandamus petition, so we know they have. Okay. So the district court has, in fact, given index newspapers the relief they sought with respect to the open portion of the contempt proceeding. Was any part of that redacted? The open portion? No. I believe, if I understand, if I got the transcript correctly, they wound up getting the entire transcript and the front part is redacted. And when the court says we're now in open court, that part is unredacted. Okay. Then do you know the answer to the question that I posed to Ms. Gordon? I do. That is as to whether the incorporation by reference occurred in the closed portion or the open portion. I didn't have a chance to read the entire closed portion, but I did read the entire open portion. It did not occur in the open portion. If it occurred at all, and I quite frankly don't recall it occurring at all, but I haven't read the entire closed portion, it would have occurred in the closed portion. So the record is clear on that. Counsel, at some point there was a motion filed on behalf of Mr. Durand to be released, and there was a declaration that he filed that detailed his conditions of confinement. How does that implicate a secret grand jury proceeding? Well, the declaration itself identifies the contemptor who is and his identity as a grand jury witness is a matter occurring before the grand jury under this Court's precedent. Is it your position that his identity ought to be redacted? That is our position, that his identity ought to be redacted. It is a matter occurring before the grand jury. What about the rest of it? What about the substance of the declaration that detailed his conditions of confinement? Our position is that it is a pleading that relates to a matter occurring before the grand jury, and therefore by definition under Rule 66 it is subject to the rule of secrecy. How does it implicate the grand jury's investigation or jeopardize the need for secrecy for the investigation? His personal recount of what occurred at Sea-Tac does not. However, that's irrelevant. By definition, it meets the definition of a matter occurring before the grand jury under the Rule 66. I appreciate the Court's position, but I don't have a position. I just ask questions. I appreciate where the Court's concern is, is that it does appear that there are certainly going to be documents in a file, in a grand jury file, that not every single sentence is going to reveal what counsel have constantly used the term grand jury secret. And it's important to understand that while secrecy is the reason why we don't allow access to grand jury proceedings, the rule doesn't use the word secret. The rule uses the phrase matter occurring before the grand jury. And it's any matter occurring before the grand jury, regardless of whether that individual matter is technically a secret that is unknown. Because as counsel correctly points out, the government is powerless to stop any grand jury witness from testifying in the grand jury and then going and telling the public exactly what questions they were asked and what their testimony was. They have a First Amendment right to do that. But the exercise of that right does not somehow unilaterally remove the veil of grand jury secrecy. That the case law is very clear on that, that the grand jury secrecy is not a right that can somehow be waived by a third party. And that's essentially what they're asking. They're sort of suggesting that because they want to disclose and perhaps have disclosed that somehow or other that trumps the rule of grand jury secrecy. And I think, before my time runs out, that it's important to back up and perhaps start looking at some first principles, which are, if you want a document, you have to have a right of access to it. And that's a question that is answered on a macro level, not a case-specific level. And the case law is clear. There's no common law right of access to grand jury records. There's no First Amendment right of access to grand jury records. The controlling case law is clear on those two points. So any right of access that the defense, or the defense, that the appellant and my co-appellee would like to get to these records has to derive from the terms of Rule 66. And there simply has not been a showing in this case that any of these records do not fall within the purview of Rule 66 or that any exception to grand jury secrecy has been met for purposes of Rule 66. So for that reason, the district court was quite correct to hold that these matters which meet the definition of a matter occurring before the grand jury are not subject to public disclosure. Regardless of the fact that it, again, it is theoretically possible, and the district court recognized this, that you could redact. But the question of redaction only comes into play if there's a right of access in the first place. And that's sort of the part that everyone is jumping over, is they want to say that there's this stuff that's not secret, therefore I have a right of access. But that sort of begs the question, and it's incorrect. You have to look at the record. He found a right of access. That's why he unlocked the door, right? At some point he found a right of access. Respectfully, Your Honor, he didn't find a right of access to any single piece of paper in this file. Well, he found a right of access to the proceeding, and he unsealed the transcript, a small portion of the transcript. Part of it, right. Part of the transcript. He unsealed not a single piece of other paper in the file. And again, that limited unsealing order, by its terms, did not unseal anything else. And again, there's been no argument that I've heard that any exception to Rule 6E applies in this case. Unless the Court has any further questions. Thank you. I don't. Thank you. Okay, Mr. Fox. I have two minutes and 47 seconds, or how much? We'll round it up to two minutes and 50 seconds. Thank you. Let me just address the procedural issue of mandamus versus appeal to start where I left off before. When I filed the mandamus writ, I believed under this Court's precedent that that was the only way I could get review. The government has always taken the position that we have a right to appeal. Actually, the right to appeal has a better standard of review than the mandamus writ. I mean, and I guess if I could, you know, truthfully stand here and say, do the appeal, it would benefit us. I think we win either way because I think the district court's orders are clearly erroneous. I don't think, though, that you need to get bogged down in that procedural morass because, again, all roads lead to Rome. The First Amendment right, and I haven't really heard counsel talk too much about the First Amendment, but there is a First Amendment right of access to open proceedings. And whether the source of that openness is Mr. Durand requesting an open proceeding or the fact that the judge opens the proceeding, once it's open, the public and the press have a right to access. What his argument is that the court, and you haven't cited any authority for the notion that the documents, the filings go with that. Well, I have cited. You can't lock the door. But what's your strongest authority for that? Well, I think that the case I cited, I think out of the Second Circuit or Third Circuit that came out in September, there's also the associated press case from this Court that says that when you have pleadings associated with an open proceeding, those are subject to disclosure. That was the DeLorean case where the judge said, well, you can come into the hearings, but all pleadings have to be initially filed under seal. And this Court said that the rights are coextensive. And if they're coextensive, then you have to look at whether the documents will assist the public in understanding what is taking place. And I have to say, since I wasn't privy to the closed proceedings in this case, and since I didn't really understand until I filed a mandamus action everything that had been filed in this case, I didn't know everything that went on before the contempt proceedings. But we've always asked for everything that would help someone understand what was taking place. I have nothing further. Okay. Thank you, Mr. Fox. Thank you. Then the case of U.S. v. Tehran. Indexed newspapers shall be submitted in the mandamus case. Indexed newspapers v. the District Court shall also be submitted. And we thank all counsel for their fine arguments. Yes. Thank you very much.
judges: Fisher, Gould, Christen